<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALEXANDER A. HARRIS and NIJIR SESSOMS, | : : : |
| Plaintiffs, | : Civil No. 24-1122 (BRM) (CLW) : : |
| v. | : **OPINION** : |
| BECKY SCOTT, *et al.*, | : : |
| Defendants. | : : |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is *pro se* Plaintiffs Alexander A. Harris and Nijir Sessoms's ("Plaintiff") civil rights complaint ("Complaint"), filed pursuant to 42 U.S.C. § 1983 (ECF No. 1), and Nijir Sessoms's application to proceed *in forma pauperis* (ECF No. 6).[1] Based on Plaintiff Sessoms's affidavit of indigence (ECF No. 6-1), Sessoms application for leave to proceed *in forma pauperis* is **GRANTED** and the Clerk of the Court to directed to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes the Complaint should be dismissed in its entirety.

---

[1] The Court previously granted Plaintiff Alexander Harris's application to proceed *in forma pauperis*. (ECF No. 5.)

I. **BACKGROUND**

The Court construes the allegations in the Complaint as true for the purposes of this Opinion. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Plaintiffs are inmates confined at Hudson County Correctional Facility ("HCCF"), in Kearney, New Jersey.[2] (*See* ECF No. 1 at 2.) Plaintiffs bring this civil rights action, pursuant to 24 U.S.C. § 1983, against Director of Nurses Max ("Max"), Director of HCCF Becky Scott ("Scott"), Deputy Director of HCCF Sharonda Murrell ("Murrell"), and Administrator/Director Michael Dantico ("Dantico") (hereinafter "Defendants"). (*See id.*)

In their Complaint, Plaintiffs submit that in November 2023, inmate Juan Hernedez was moved to the medical tier and tested positive for COVID-19. (ECF No. 1 at 8.) The inmate was then moved to a different wing. (*Id.*) Plaintiffs argue other inmates in the wing were not tested, however, Plaintiffs also submit that inmates Christopher Graham and Frank Piliaro then tested positive for COVID-19. (*Id.*) Those inmates were permitted to quarantine on the wing. (*Id.*) A week later inmate Mitchell Watson tested positive for the virus. (*Id.*) Inmates were only given disposable masks, rather then the mandated KN-95 masks. (*Id.*) Plaintiffs contend Defendant Nurse Max was testing the inmates for Covid-19 but refusing to allow them to see the results. (*Id.*)

Plaintiffs claim inmates were and "still are" exposed to a "deadly infectious disease" because inmate Juan Hernedez was housed "on the medical unit" after testing positive for Covid-19. (*Id.* at 11.) Plaintiffs submit Defendants "failed to isolate Christopher Graham, Frank Piliaro, and Mitchel Watson" and failed to provide proper "protection equipment" and adequate cleaning supplies. (*Id.* at 12.) The Complaint states that Defendants Scott, Murrell, and Dantico "ignored

---

[2] The Complaint indicates that Plaintiffs have been convicted. (ECF No. 1 at 2.) It is unclear if that applies to both Plaintiffs. However, for the purposes of this screening, the Court will assume both Plaintiffs are convicted prisoners.

the recommendations of the CDC placing those in [their] care at substantial risk of serious irreparable harm." (*Id.* at 13.)

Plaintiffs seek monetary damages.

## II. LEGAL STANDARD

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) and 1915A because Plaintiffs are prisoners who are proceeding as indigent.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed,

3

"pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### B. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Therefore, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## III. DECISION

### A. Supervisory Liability Claim

The Complaint appears to allege that Defendants Scott, Murrell, and Dantico failed to have proper policies in place to prevent the spread of COVID-19. (*See* ECF No. 1.) The Court construes the Complaint as raising claims pursuant to 42 U.S.C. § 1983 for violations of the due process clause of the Eighth Amendment. Plaintiffs seek to hold Defendants liable under a theory of supervisory liability.

The Eighth Amendment requires prison officials to provide humane conditions of confinement. S*ee Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "For the conditions of confinement to rise to the

level of an Eighth Amendment violation, they must deny the 'minimal civilized measure of life's necessities.'" *Betts*, 621 F.3d at 256 (quoting *Farmer*, 511 U.S. at 835). A "failure to provide minimally civil conditions of confinement to pre-trial detainees violates their rights against punishment without due process of law." *Roman v. DeMarco*, No. 18-8010, 2019 WL 452736, at *2 (D.N.J. Feb. 5, 2019) (citing *Reynolds v. Wagner*, 128 F.3d 166, 173–74 (3d Cir. 1997)).

A plaintiff may establish supervisory liability under § 1983 by showing: (1) liability based on an establishment of policies, practices, or customs that directly caused the constitutional violation; or (2) personal liability based on the supervisor participating in the violation of the plaintiff's rights, directing others to violate the plaintiff's rights, or having knowledge of and acquiescing to a subordinate's conduct. *Doe v. New Jersey Dep't of Corr.*, No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1987). "Only those defendants whose inactions or actions personally caused [Plaintiff's] injury may be held liable under § 1983." *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1147 (3d Cir. 1990). In other words, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode*, 845 F.2d at 1207.

"[T]o hold a supervisor liable . . . [for their deficient policy or practice] . . . the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

The Third Circuit addressed COVID-19 in the prison setting in *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020), explaining that when evaluating a detention facility's protocols, courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in responding to COVID unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation. *Id.*

In the Complaint, Plaintiffs appear to argue that Defendants Scott, Murrell, and Dantico failed to follow Center of Disease Control ("CDC") guidelines regarding quarantine, protective equipment, and proper sanitation. (*See generally* ECF No. 1.) However, the Complaint states that the inmates who tested positive for COVID-19 were either removed from their wing or placed in quarantine in their cell. The Complaint also states that inmates were given disposable masks. While Plaintiffs submit that they were not provided with proper sanitation equipment, but do not allege that there were no cleaning supplies provided. Overall, Plaintiffs' Complaint does not address how the policies or protocols of placing inmates in quarantine and providing disposable masks placed Plaintiffs at an unreasonable risk of injury. Plaintiffs also provide no facts that Defendants Scott, Murrell, and Dantico were aware of said risk, nor do they offer facts that Plaintiffs experienced injury from Defendants' failure to employ as specific policy or protocol. *Beers-Capitol*, 256 F.3d at 133-34. To the extent Plaintiffs claim their constitutional rights were violated merely by having been exposed to the virus, or by being at an increased risk of exposure to the virus, the allegation is insufficient because exposure alone does not violate the Constitution. *See Hope*, 972 F.3d at 329 (rejecting petitioners' arguments that exposure to COVID-19 was per se unconstitutional and that the Government must eliminate their risk of exposure to comply with constitutional mandates); *Bennett v. Aviles*, No. 22-7003, 2022 WL 17887227, at *3 (D.N.J. Dec. 23, 2022) ("Bennett's one-

sentence allegation . . . that he tested positive for COVID . . . is insufficient to state a claim for unconstitutional conditions of confinement. Millions, of course, have contracted COVID both inside and outside of prison walls. Exposure alone does not establish that prison officials committed a constitutional violation."). Plaintiffs fail to state a viable cause of action under Section 1983 for supervisory liability against Defendants Scott, Murrell, and Dantico. *See Iqbal*, 556 U.S. at 678. Accordingly, the Complaint is **DISMISSED WITHOUT PREJUDICE** as to Defendants Scott, Murrell, and Dantico.

### B. Deliberate Indifference to Serious Medical Needs Claim

The Court liberally construes the Complaint as raising an Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Max. (*See* ECF No. 1 at 8.) Plaintiffs submit that Defendant Nurse Max was testing the inmates for COVID-19 but refusing to allow them to see the results. (*Id.*)

The Eighth Amendment prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires prison officials to provide inmates with adequate medical care. *Estelle*, 429 U.S. at 103–04. In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or are so obvious a lay person would recognize the necessity for a doctor's

7

attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). A plaintiff alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations and citations omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.2d at 110.

The only fact submitted against Defendant Max in the Complaint is that she refused to provide inmates with the results of their COVID-19 tests. (ECF No. 1 at 9.) At the outset, the Court

notes that Plaintiffs do not provide facts that Defendant Max failed to provide Plaintiffs themselves with the results of Plaintiffs Covid-19 test. Plaintiffs lack standing to sue on behalf of any other inmate. *See Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir. 1981) (holding that prisoners do not have standing to sue on behalf of their fellow inmates); *see also Allen v. Eckard*, 804 F. App'x 123,127 (3d Cir. 2020) (inmate lacked standing to set forth claim that other inmates were assaulted); *Vaughn v. Cambria County Prison*, 709 F. App'x 152, 155 (3d Cir. 2017) (inmate lacked standing to raise constitutional claims on behalf of other inmates). Therefore, to the extent that Plaintiffs are seeking to raise any claims on behalf of their fellow inmates, they lack standing to do so. In this regard, "a plaintiff must 'assert his or her own legal interests rather than those of a third party' [to have standing to bring a claim]." *Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2001) (citation omitted). Additionally, Plaintiffs submit no facts that Defendant Max knew that they needed medical attention and refused to provide it. The Complaint is also devoid of any facts that Defendant Max delayed providing Plaintiffs with any necessary medical treatment. *Rouse*, 182 F.3d at 197. The Complaint fails to state a deliberate indifference claim against Defendant Max. *See Iqbal*, 556 U.S. at 678. As such, the Complaint is **DISMISSED WITHOUT PREJUDICE** as to Defendant Max.

### IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE**. Plaintiffs are granted thirty days to file an amended complaint to cure the deficiencies discussed above. An appropriate Order follows.

Dated: October 16, 2024

/s/ Brian R. Martinotti
HON. BRIAN R. MARTINOTTI
UNITED STATES DISTRICT JUDGE

9